Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| ANTONIO RODRIGUEZ APONTE<br><br>Parte Apelante<br><br>v.<br><br>NEGOCIADO DE LA POLICIA DE PUERTO RICO, ESTADO LIBRE ASOCIADO DE PUERTO RICO/SECRETARIO DE JUSTICIA, FISCALÍA DE BAYAMÓN<br><br>Parte Apelada | TA2025AP00530 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm.: BY2025CV00425<br><br>Sobre: Petición/Revisión Portación sobre Ley de Armas |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero

Ortiz Flores, Jueza ponente

**SENTENCIA**

En San Juan, Puerto Rico, el 16 de diciembre de 2025.

Comparece ante nos el señor Antonio Rodríguez Aponte (en adelante, la parte apelante) mediante recurso de apelación instado el 9 de noviembre de 2025. En su recurso, nos solicita la revisión de una *Sentencia*[1] del Tribunal de Primera Instancia, Sala Superior de Bayamón en la cual, el foro primario declaró *Ha Lugar* una Moción de Desestimación presentada por el Estado Libre Asociado de Puerto Rico (en adelante, ELA) y el Negociado de la Policía de Puerto Rico (en adelante, NPPR). En la aludida decisión, el Tribunal de Primera Instancia desestimó la demanda que peticionaba revocar la denegatoria a una solicitud de nueva licencia de armas a favor de la parte apelante, y ordenó el archivo del caso de epígrafe.

Por los fundamentos que expondremos a continuación, adelantamos la confirmación de la sentencia apelada.

---

[1] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI), a la Entrada Núm. 16.

## I

La controversia ante nos comenzó el 28 de enero de 2025, cuando el señor Antonio Rodríguez Aponte presentó la *Demanda al Amparo del Art. 2.02 de la Ley de Armas de 2020.*[2] En la misma, alegó que el 5 de diciembre de 2024, el NPPR le denegó una solicitud para obtener la licencia de armas. El fundamento para la denegatoria según se expuso en la demanda fue que el apelante no cumplía con los requisitos establecidos en los Artículos 2.02(d)(3) y 2.09 de la Ley de Armas de Puerto Rico de 2020, Ley Núm. 168-2019, 25 LPRA sec. 462a, 462h, debido a convicciones previas por violaciones a las disposiciones de la mencionada ley y las anteriores. Arguyó que, de manera oportuna, presentó una *Solicitud de Reconsideración*[3] ante el NPPR. En su escrito alegó que, el NPPR, no le notificó adecuadamente toda vez que no expuso los requisitos legales que el apelante incumplió ni los delitos imputados que motivaron la denegatoria de la solicitud. Afirmó haber recibido un *Indulto Total*[4] en el año 2007, por consiguiente, enfatizó que resultaba contrario a la ley y a la Constitución considerar cualquier convicción eliminada como fundamento para denegar la referida licencia. Añadió que, transcurrido el término otorgado en ley para que agencia emitiera su decisión en cuanto a la reconsideración, la misma no se expresó. A tenor, solicitó al foro primario que declarase *Ha Lugar* la demanda de epígrafe, revocando la determinación de la agencia apelada y, por consiguiente, ordenándoles a expedir la licencia de armas a su favor.

A la luz de lo anterior, el 5 de mayo de 2025, el NPPR presentó *Moción de Desestimación*[5] al amparo de la Regla 10.2 de Procedimiento Civil de Puerto Rico, 32 LPRA Ap. V, R.10.2. En la misma, sostuvo que existía impedimento para la expedición de la licencia de armas a favor del apelante. Alegó que el mismo no cumplió con las disposiciones de la Ley Núm.168, toda vez que fue convicto por violaciones a las disposiciones de

---

[2] SUMAC TPI, a la Entrada Núm. 1.
[3] SUMAC TPI, a la Entrada Núm. 2, Anejo 1.
[4] SUMAC TPI, a la Entrada Núm. 15, Anejo 1
[5] SUMAC TPI, a la Entrada Núm. 11.

esta Ley y a los Artículos 6 y 8 de la Ley Núm. 17 de 19 de enero de 1951, conocida como "Ley de Armas de Puerto Rico", según derogada. Subrayó que la concesión de un indulto total al apelante no suprime el expediente criminal de los archivos digitales. Agregó que, a tenor con las disposiciones de la mencionada ley, el historial de violencia de cada solicitante es uno de los elementos a considerar para expedir licencias de armas. A tenor, solicitó la desestimación de la demanda de epígrafe por considerar que el apelante dejó de exponer una reclamación que justificara un remedio, según solicitado.

Luego de varios incidentes procesales, el 26 de junio de 2025, la parte apelante presentó *una Moción en Oposición a la Solicitud de Desestimación y/o Sentencia Sumaria*.[6] En síntesis, adujo que no existía controversia sobre los hechos esenciales del caso. Sin embargo, concluyó que no procedía la denegatoria a su solicitud de licencia de armas conforme a derecho. Arguyó que, los hechos por los cuales fue imputado de delito bajo la Ley Núm. 17 de 19 de enero de 1951, *supra,* ocurrieron hace cuarenta y un (41) años. Enfatizó que fue indultado totalmente por dichos delitos y que, posterior a ello, no ha incurrido nuevamente en delito ni ha sido objeto de investigación criminal. Acentuó que, debido al mencionado Indulto, todo dato relativo a convicciones tenía que ser eliminado del Sistema de Información de Justicia Criminal (SIJC), incluyendo las memorias de las computadoras. Por lo cual, solicitó al foro primario que declarase *No Ha Lugar* la moción de desestimación presentada por la parte apelada, y que ordenase la expedición de la licencia de armas según solicitada.

En vista de lo anterior, el 29 de agosto de 2025, el Tribunal de Primera Instancia emitió una *Sentencia*.[7] En la citada, el foro primario hizo hincapié en que un indulto tiene el efecto de liberar al indultado del cumplimiento de una sentencia y sus efectos legales, mas no borra el

---

[6] SUMAC TPI, a la Entrada Núm. 15.
[7] SUMAC TPI, a la Entada Núm. 16.

hecho de la ocurrencia de las convicciones. Añadió que, la Ley Núm. 168-2020 no circunscribe la evaluación de la solicitud de licencia de armas a una verificación del Certificado de Antecedentes Penales. Sino que, conforme a dicha ley, la investigación comprende los archivos digitales de cualquier agencia gubernamental de Puerto Rico, entre otros archivos. Por lo cual, concluyó que la determinación del NPPR estuvo fundamentada en ley y fue consistente con la política pública del Estado, la cual establece que ninguna persona con historial criminal de violencia debe tener acceso a una licencia de armas. A tenor, declaró *Ha Lugar* la Moción de Desestimación presentada por la parte apelada y ordenó el archivo del caso de epígrafe.

Inconforme con la determinación, el 10 de septiembre de 2025, la parte apelada presentó una *Moción Solicitando Reconsideración a Sentencia de Desestimación*.[8] En la referida, reiteró que su Certificado de Antecedentes Penales no reflejaba antecedente criminal alguno. Arguyó, entre otras cosas, que el indulto total que le fue otorgado tenía el efecto de absolver al indultado de todas las consecuencias directas o colaterales de los delitos cometidos. A tenor, solicitó que se declarase *Ha Lugar* la referida moción ordenando la expedición de la licencia de armas a su favor. En su defecto, solicitó que se paralizara el presente caso debido a que el Tribunal Supremo de Puerto Rico expidió un *certiorari* en el caso *Hernández Vázquez v Negociado de la Policía de Puerto Rico*, CC-2024-0732, el cual subrayó, que versa sobre una controversia idéntica a la que nos concierne.

En reacción, el 3 de octubre de 2025, la parte apelada presentó una *Moción en Cumplimiento de Orden y en Oposición a Reconsideración*.[9] Arguyó que, la parte apelada no cumplió con la Regla 47 de las Reglas de Procedimiento Civil,[10] debido a que no expuso con suficiente particularidad y especificidad los hechos y el derecho que deben reconsiderarse como exige la precitada regla. Por lo cual, solicitó al foro primario que declarase

---

[8] SUMAC TPI, a la Entrada Núm. 17.
[9] SUMAC TPI, a la Entrada Núm.
[10] 32 LPRA Ap. V, R. 47.

*No Ha Lugar* la referida moción de reconsideración, sin haber interrumpido el término.

En consecuencia, mediante la *Resolución*[11] emitida el 10 de octubre de 2025, y notificada el 14 de octubre de 2025, el foro primario declaró *No Ha Lugar* la reconsideración solicitada. Inconforme, la parte apelante expone en su recurso de *Apelación*[12] los siguientes señalamientos de errores:

> Erró el Tribunal de Primera Instancia actuó contrario a la ley al confirmar la determinación del NPPR que denegó la solicitud de la licencia de armas del apelado de conformidad con los Artículos 2.02(d) y 2.09 de la Ley Núm. 168-2019, que impide la concesión de una licencia de armas a alguna persona que ha sido convicta por violación a disposiciones de leyes de armas anteriores, el cual resultó de la investigación en los archivos digitales.

> Erró el Tribunal de Primera Instancia al determinar que "Es conocido que, como regla general, las decisiones de los organismos administrativos se presumen correctas y merecen la deferencia de los tribunales. Presunción que descansa el "*expertise* administrativo" de la agencia. Por lo tanto, en la revisión judicial de las misma, la intervención de los tribunales es limitada y consiste en evaluar si la agencia actuó de manera arbitraria o ilegal, o de forma tan irrazonable que su actuación constituyó un abuso de discreción.

> Erró el Tribunal al determinar que "el indulto otorgado al demandante en el caso ante nuestra consideración tiene el efecto de librar al indultado, en este caso el demandante, del cumplimiento de la sentencia y de los efectos legales de la misma, no borra el hecho de la ocurrencia de las convicciones.

Mediante *Resolución*,[13] emitida el 14 de noviembre de 2025 y notificada el 17 de noviembre de 2025, se le concedió a la parte apelada hasta la fecha del 9 de diciembre de 2025, para que presente su alegato en oposición. A tenor con lo anterior, compareció la parte apelada mediante *Alegato en Oposición*[14] el 9 de diciembre de 2025. Contando con la comparecencia de ambas partes, procedemos a resolver.

---

[11] SUMAC TPI, a la Entrada Núm. 21.
[12] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA), a la Entrada Núm. 1.
[13] SUMAC TA, a la Entrada Núm. 2.
[14] SUMAC TA, a la Entrada Núm. 3.

**II**

### A. Revisión Judicial

La *Ley de Procedimiento Administrativo Uniforme*, Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA 9601, *et seq.* (LPAU) establece los estándares de revisión judicial de órdenes, resoluciones y providencias dictadas por las agencias administrativas. El precitado estatuto dispone que la revisión judicial se circunscribirá a evaluar lo siguiente: (1) si el remedio concedido por la agencia es el adecuado; (2) si las determinaciones de hechos están sostenidas por la evidencia sustancial que surge de la totalidad de expediente; y (3) si las conclusiones de derecho son correctas, para cuyo escrutinio el foro revisor no tiene limitación alguna. 3 LPRA sec. 9675 (Sección 4.5); *Reyes Salcedo v. Policía de PR*, 143 DPR 85, 93 (1997), que cita a: D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Colombia, FORUM, 2013, pág. 688.

En términos sustantivos y procesales, se ha resuelto que los procedimientos y las decisiones de las agencias administrativas están cobijados por una presunción de regularidad y corrección. *Graciani Rodríguez v. Garage Isla Verde, LLC.*, 202 DPR 117, 128-129 (2019). Al momento de revisar una decisión administrativa el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. *Rebollo v. Yiyi Motors*, 161 DPR 69, 77-78 (2004).

La parte que recurre judicialmente una decisión administrativa tiene el peso de la prueba para demostrar que las determinaciones de hechos no están basadas en el expediente o que las conclusiones a las que llegó la agencia son irrazonables. *Id* La presunción de corrección de la decisión administrativa cederá en las siguientes circunstancias: (1) cuando no está basada en evidencia sustancial; (2) cuando el organismo administrativo ha errado en la aplicación de la ley, y (3) cuando ha mediado una actuación irrazonable o ilegal. *Otero v. Toyota*, 163 DPR 716, 729 (2005).

El alcance de la revisión judicial de las decisiones administrativas conforme la Sección 4.5 de LPAU, 3 LPRA sec. 9675, se limitan a determinar si el remedio brindado por la agencia es el apropiado; si las determinaciones de hechos realizadas se basan en evidencia sustancial que obra en el expediente administrativo y si las conclusiones de derecho son correctas mediante una revisión completa. Véase, además, *P.R.T.Co. v. J. Reg. Tel. de P.R.*, 151 DPR 269, 281 (2000).

Por otro lado, la Sección 4.5 de la LPAU, *supra*, dispone que las conclusiones de derecho "…serán revisables en todos sus aspectos por el tribunal". Sobre el mismo, el Tribunal Supremo de Puerto Rico, en el caso *Vázquez et al .v. DACo*, 2025 TSPR 56, 215 DPR __ (2025), adoptó lo resuelto por el Tribunal Supremo de los Estados Unidos en *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). Conforme a lo establecido por el Tribunal Supremo en el caso precitado, los tribunales deben ejercer un juicio independiente al de un organismo administrativo, al decidir si ésta ha actuado dentro del marco de sus facultades estatutarias. *Id.* Del mismo modo, contrario a la práctica de las pasadas décadas, los tribunales no vienen obligados a darle deferencia a la interpretación de derecho que haga una agencia administrativa cuando la ley es ambigua. *Id.*

**B. Ley de Armas de Puerto Rico de 2020**

Por virtud de la doctrina de incorporación selectiva y lo dispuesto en la Decimocuarta Enmienda de la Carta de Derechos de la Constitución de los Estados Unidos de América, el Tribunal Supremo federal ha hecho extensivo a los estados de la Unión los derechos fundamentales allí consagrados; entre estos, el derecho fundamental a poseer y portar armas, contemplado en la Segunda Enmienda, Emdas. II y XIV, Const. EE. UU., LPRA, Tomo I. Además, el Alto Foro estadounidense ha reconocido los mismos derechos fundamentales a los ciudadanos americanos en Puerto Rico, *Pueblo v. Rodríguez López et al.*, 210 DPR 752, 15-16 (2022). Si bien es de carácter fundamental, el derecho de la Segunda Enmienda no es ilimitado ni irrestricto. Aun cuando garantiza el derecho individual a poseer

y portar armas y se proscribe una prohibición absoluta, el Tribunal Supremo federal aclaró que la Segunda Enmienda "no reconoce un derecho a poseer y a portar cualquier arma, de cualquier manera y para cualesquiera propósitos." *Id.*, a la pág. 17, que cita a *District of Columbia v. Heller*, 554 US 570, 627 (2008); véase, además, *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 37 (2018).

Por otro lado, en el caso *District of Columbia v. Heller*, *supra*, el Tribunal Supremo federal identificó ciertas instancias, en las que las limitaciones al referido derecho constitucional se presumen válidas (*longstanding prohibitions*). En *Pueblo v. Rodríguez López, et al.*, *supra*, nuestro Alto Foro, a modo de ejemplo y sin que se entienda como un listado taxativo, mencionó como válidas "las medidas que prohíban la posesión de armas a aquellas personas que son incapaces mentales o convictos por delitos graves; en lugares sensitivos, como las escuelas o edificios de gobierno; o que impongan ciertas cualificaciones para la venta de armas." *Pueblo v. Rodríguez López, et al.*, a las págs. 18-19; *District of Columbia v. Heller*, *supra*, a las págs. 626-627.

Cónsono a los pronunciamientos judiciales federales, la Asamblea Legislativa de Puerto Rico promulgó la Ley Núm. 168 de 11 de diciembre de 2019, "Ley de Armas de Puerto Rico de 2020", 25 LPRA sec. 461, *et seq*. A través de este cuerpo legal, el Estado ejercita su poder inherente de reglamentación, con el fin de promover una mayor seguridad y bienestar público para el País. Asimismo, la Ley de Armas responde al interés apremiante del Estado de proveer una herramienta que les permita a las agencias del orden público a ser más eficaces en su lucha contra el crimen. *Id.,* véase Exposición de Motivos.

En lo que nos compete, el Artículo 2.02, inciso (a) (2), de la Ley de Armas de 2020, 25 LPRA sec. 462a (a) (2), estatuye que todo peticionario debe tener un expediente negativo de antecedentes penales y no estar acusado o en proceso de juicio por algunos de los delitos enumerados en el Artículo 2.09 del estatuto o sus equivalentes, tanto en Puerto Rico, como

en cualquier jurisdicción de Estados Unidos, a nivel federal o en cualquier país extranjero.

Del mismo modo, en el ejercicio delegado al Negociado de la Policía para la expedición de licencias de armas, la Agencia está facultada en ley para realizar las investigaciones que sean necesarias en los archivos digitales a los que tenga acceso. En específico, el Artículo 2.02 (d) (1) (3) (4) de la Ley de Armas de 2020, 25 LPRA sec. 462a (d) (1) (3) (4), establece lo siguiente:

> (d) Radicación de Solicitudes de Licencia de Armas:
>
> (1) Toda solicitud de Licencia de armas por residentes en Puerto Rico, cumplimentada conforme a esta Ley, junto al pago correspondiente, habrá de radicarse en las Oficinas de Licencias de Armas, o en la Comandancia de Área de donde reside el peticionario, la cual deberá remitir dicha solicitud en un término no mayor de cinco (5) días a la Oficina de Licencias de Armas. Recibido el pago por los derechos y los documentos, debidamente cumplimentados, se procederá de inmediato a realizar el cotejo electrónico, sobre el expediente negativo de antecedentes penales del peticionario.
>
> .         .         .         .         .         .         .
>
> (3) A partir de que se acepte la solicitud para la expedición de una licencia de armas, la Oficina de Licencias de Armas, determinará y certificará por escrito si el peticionario cumple o no, con los requisitos establecidos en esta Ley para la expedición de la licencia de armas. Esto deberá lograrse mediante una investigación en los archivos digitales de cualquier agencia gubernamental de Puerto Rico, de Estados Unidos o cualquier subdivisión política de este, de cualquier entidad extranjera o internacional a la que pueda tener acceso, incluyendo los archivos del *National Crime Information Center (NCIC)*, del *National Instant Criminal Background Check System (NICS)*, el Sistema de Información de Justicia Criminal (SIJC-PR) y el Registro Criminal Integrado (RCI).
>
> (4) De resultar la investigación realizada por la Oficina de Licencias de Armas de los archivos digitales en una determinación de que la persona no cumple con todos los requisitos establecidos en esta Ley, no le será concedida la licencia de armas, pero sin menoscabo a que el peticionario pueda solicitarla nuevamente en un futuro. […]

Es decir, el Artículo 2.02, incisos (a) (b) (c), de la Ley de Armas de 2020, *supra*, enumera los requisitos generales que todo peticionario debe cumplir para que pueda presentar su solicitud de licencia de armas y esta sea aceptada para evaluación. Entre tales requisitos se encuentra un certificado negativo de antecedentes penales. Luego, el Artículo 2.02, inciso (d) (1) (3) (4) de la Ley de Armas de 2020, *supra*, dispone que el expediente negativo de antecedentes penales debe ser cotejado por el Negociado. Este, además, deberá certificar mediante una investigación de los archivos digitales accesibles que el peticionario cumple con los requisitos del estatuto. De incumplir con algún requisito, no se expedirá la licencia de armas.

Al respecto, el Artículo 2.09 de la Ley de Armas de 2020, 25 LPRA sec. 462h, que versa sobre los fundamentos para rehusar la expedición de licencias, dispone en lo pertinente lo siguiente:

> La Oficina de Licencias de Armas no expedirá licencia de armas, o de haberse expedido se revocará, la licencia de armas de cualquier persona que haya sido convicta, en Puerto Rico, en cualquier otra jurisdicción estadounidense de cualquier delito grave o su tentativa, por delito menos grave que conlleve violencia, por conducta constitutiva de violencia doméstica, según tipificada en la Ley Núm. 54 de 15 de agosto de 1989, según enmendada, o conducta constitutiva de acecho, según tipificada en la Ley 284-1999, según enmendada, ni por conducta constitutiva de maltrato de menores, según tipificada en la Ley 246-2011, según enmendada, "Ley para la Seguridad, Bienestar y Protección de Menores". [...]

Surge literalmente del estatuto que el Negociado deberá rehusar expedir la credencial de armas a quien incumpla el Artículo 2.09 de la Ley de Armas de 2020, *supra*; o, de haberla expedido, debe revocarla. Entre otras instancias, la imposibilidad de expedir la licencia se extiende cuando el peticionario ha sido convicto de cualquier delito grave o su tentativa, por delito menos grave que conlleve violencia, por conducta constitutiva de violencia doméstica o maltrato de menores.

**C. Ley Núm. 254 de 27 de julio de 1974**

De otra parte, la Ley Núm. 254 de 27 de julio de 1974, conocida como la "Ley para Autorizar a la Policía de Puerto Rico la Expedición de

Certificados de Antecedentes Penales", 34 LPRA sec. 1725 *et seq.*, creó el marco legal para encomendar a la Policía de Puerto Rico la expedición de certificaciones de antecedentes penales; y para que se estableciese la reglamentación necesaria para la eliminación de ciertas convicciones del expediente penal. En el caso de delitos graves, siempre y cuando la persona exconvicta no esté sujeta al "Registro de Personas Convictas por Delitos Sexuales Violentos y Abuso Contra Menores" ni al "Registro de Personas Convictas por Corrupción", podrá solicitar en el Tribunal de Primera Instancia una orden para que se elimine la convicción del certificado de antecedentes penales. Entre los requisitos a cumplir se encuentran el que hayan transcurrido cinco años desde que se cumplió la sentencia y la persona no haya cometido otro delito; tenga buena reputación en la comunidad; y se haya sometido a la muestra requerida por la Ley del Banco de Datos de ADN, de estar sujeta a ello. Art. 4 Ley Núm. 254-1974, 34 LPRA sec. 1725a-2. Por igual, el Artículo 7 de la Ley Núm. 254-1974, 34 LPRA sec. 1725, dispone que se deberá expedir un certificado negativo, cuando de los archivos de la Policía no surja un expediente abierto de la persona.

Se desprende de la letra del estatuto que, luego del cumplimiento de los requisitos legales pertinentes, se autoriza al Negociado a eliminar del certificado de antecedentes penales las condenas por los delitos graves y menos graves. El Tribunal Supremo ha expresado que la intención de la Asamblea Legislativa al promulgar el estatuto fue "potenciar la inserción de los exconvictos en la fuerza laboral y su consiguiente rehabilitación mediante la eliminación de convicciones previas trascurrido el término dispuesto en ley." *Garib Bazaín v. Hosp. Aux. Mutuo, et al.,* 204 DPR 601, 622 (2020).

En lo relativo al caso del epígrafe, en *Rivera Pagán v. Supte. Policía de P.R.,* 135 DPR 689 (1994), el Tribunal Supremo enfrentó una controversia similar. Allí, el señor Rivera Pagán, quien había eliminado sus convicciones del certificado de antecedentes penales y ostentaba buena

reputación entre sus vecinos, demandó al Estado por denegarle una licencia de armas. El recurrido prevaleció en la primera instancia judicial.

En ese caso, mientras la derogada Ley de Armas de 1951 aplicable en aquel momento impedía la expedición de la licencia de armas a los convictos de los delitos enumerados o sus tentativas, la Ley Núm. 108 de 21 de junio de 1968, "Ley de Eliminación de Convicciones de Delitos Menos Graves del Récord Penal", 34 LPRA sec. 1731, *et seq.* (derogada), equivalente a la Ley Núm. 254-1974, permitía la eliminación de cualquier convicción, salvo ciertos delitos especificados y aquellos que implicaran depravación moral. Nuestro Tribunal Supremo analizó si las dos tentativas de asesinato, por las cuales el señor Rivera Pagán fue convicto junto a otros delitos, implicaban depravación moral. Contestó en la afirmativa. Por consiguiente, la Máxima Curia revocó al foro impugnado y sostuvo la denegación del Superintendente de la Policía como sigue:

> [R]esolvemos que actuó acertadamente el Superintendente de la Policía de Puerto Rico al descartar la resolución dictada por la Sala de Manatí del Tribunal de Distrito de Puerto Rico, mediante la cual se ordenó la eliminación del expediente penal del recurrido Luis Rivera Pagán (sus dos (2) convicciones por los delitos de tentativa de asesinato), cuando denegó la solicitud de este para tener y poseer un arma de fuego por razón de la prohibición contenida en el Art. 17 de la Ley de Armas de Puerto Rico, *supra*. (Énfasis nuestro.) *Rivera Pagán v. Supte. Policía de P.R.*, *supra*, a la pág. 801.

Ahora, sobre la prohibición expresamente estatuida en el referido Artículo 17 de la Ley de Armas de 1951, que guardaba similitud con el actual Artículo 2.09 de la Ley de Armas de 2020, *supra*, el Alto Foro opinó que, de su lectura, se desprendía con claridad que una persona convicta por los delitos exceptuados "no podrá gozar del privilegio de obtener una licencia para tener y poseer un arma de fuego." *Rivera Pagán v. Supte. Policía de P.R.*, *supra*, a la pág. 704.

En el contexto del ordenamiento anterior, Ley Núm. 404 de 11 de septiembre de 2000, 25 LPRA sec. 455 *et seq.* (derogada), el Tribunal Supremo resolvió el caso *Rolón Martínez v. Caldero López*, *supra*. Si bien el mencionado estatuto incluía la prohibición de expedir licencias a los

convictos de cualquier delito grave o su tentativa, también aludía al historial de violencia. En ese caso, que versaba sobre una revocación de la licencia de armas, nuestro Tribunal Supremo concluyó que no era necesario ser encontrado culpable en el ámbito penal (lo que equivale a poseer un certificado negativo de antecedentes penales) para sostener una determinación de que la persona tenía un historial de violencia y, en consecuencia, no tener derecho a la licencia de armas, ya fuera no concediéndola o revocándola. Por tanto, la mera tenencia de un certificado negativo de antecedentes penales, por sí, resultaba insuficiente, ya que "ser encontrado culpable por algún delito y tener un historial de violencia son dos requisitos distintos y separados." *Id*, a la pág. 44.

### D. Ley Núm. 143 de 26 de agosto de 2014

La Ley Núm. 143 de 26 de agosto de 2014 "Ley del Protocolo para Garantizar la Comunicación Efectiva entre los Componentes de Seguridad del Estado Libre Asociado de Puerto Rico y del Sistema de Información de Justicia Criminal", 4 LPRA sec. 533 *et seq.*, tiene como propósito establecer "un sistema tecnológico y procedimiento uniforme que permita el intercambio efectivo de información entre las entidades gubernamentales del Estado Libre Asociado de Puerto Rico relacionadas con la seguridad pública del país y aquellas que se encuentran estrechamente vinculadas con las mismas, de manera tal que se alcance el mejor funcionamiento del Sistema de Información de Justicia Criminal." Art. 2, Ley Núm. 143-2014, 4 LPRA sec. 533. El Artículo 3a (a) del estatuto, 4 LPRA sec. 534a (a), define *Sistema de Información de Justicia Criminal (SIJC) o Sistema* como "el sistema encargado de proveer información completa y correcta a los varios integrantes del Sistema de Justicia Criminal en Puerto Rico." El SIJC, adscrito al Departamento de Justicia, está compuesto por los integrantes del Sistema de Justicia Criminal en Puerto Rico, a saber: el Departamento de Justicia, la Policía de Puerto Rico, el Poder Judicial, el Departamento de Corrección y Rehabilitación, el Departamento de la Familia, el Departamento de Transportación y Obras

Públicas y el Instituto de Ciencias Forenses. Art. 4 Ley Núm. 143-2014, 4 LPRA sec. 533b.

En cuanto al "Protocolo", el Artículo 3a (c) de la Ley Núm. 143-2014, 4 LPRA sec. 534a (c), lo describe como "aquel conjunto de normas y procedimientos preparado por el Comité [Intergubernamental] y adoptado por todas las entidades gubernamentales con inherencia en la seguridad pública del país y aquellas que se encuentran estrechamente relacionadas con las mismas, las cuales se describen en esta Ley." De esta forma, se puntualiza lo siguiente:

> En el Protocolo se podrá disponer cualquier otra información de naturaleza criminal que las que las entidades gubernamentales que componen el Comité entiendan que debe formar parte de la información disponible en el Sistema, por su relevancia para la seguridad en el país y para el cumplimiento de los propósitos del Sistema. […] Asimismo, tomará todas las medidas necesarias para asegurarse de que todo dato relativo a convicciones cuya eliminación del récord penal de una persona haya sido ordenado por un Tribunal competente sea efectiva y totalmente eliminada del Sistema de Información de Justicia Criminal, incluyendo, pero sin que esto se entienda como una limitación, las memorias de cualesquiera computadoras utilizadas por el Sistema. Art. 8 Ley 143-2014, 4 LPRA sec. 533e.

### E. Indulto Total

La Constitución de Puerto Rico, en su Artículo IV, Sección 4, ha reconocido la facultad del Gobernador o la Gobernadora para conceder clemencias ejecutivas. Art. IV, Sec. 4, Const. PR, LPRA, Tomo 1. El precitado estatuto define dicha facultad como una atribución para "[s]uspender la ejecución de sentencias en casos criminales, conceder indultos, conmutar penas y condonar total o parcialmente multas y confiscaciones por delitos cometidos en violación de las leyes de Puerto Rico." *Pueblo v. Arlequín Vélez*, 204 DPR 117, 134 (2020). La clemencia ejecutiva podrá ser ejercitada por el Gobernador o Gobernadora de Puerto Rico de forma total y absoluta, o en forma condicionada. *Pueblo v. Albizu*, 77 DPR 888, 893 (1955).

**III**

En el caso ante nuestra consideración, la primera instancia judicial tuvo ante su consideración la revisión de una determinación administrativa, en la cual el NPPR denegó la expedición de una licencia de armas presentada por la parte apelante. El foro judicial primario, mediante una Sentencia, resolvió desestimar el pleito en consideración a una Moción de Desestimación presentada por el ELA y el NPPR. En consecuencia, y ante su inconformidad con la determinación, la parte apelante acude ante nos mediante un recurso de apelación y señala la comisión de tres errores por parte del foro primario. Debido al contenido de los errores señalados, evaluaremos el primer y tercer error de manera conjunta, mientras que el segundo error será evaluado de manera independiente. Veamos.

En síntesis, en cuanto al primer y tercer error, la parte apelante nos plantea que el foro primario incidió al confirmar la denegatoria del NPPR a su solicitud de licencia de armas. Sugirió que esta controversia es una de estricto de derecho, y que solo procede determinar si existe un impedimento en la legislación vigente para expedir la licencia de armas a su favor. Además, esgrimió que, erró el foro primario al determinar que el indulto tiene el efecto de librar al indultado del cumplimiento de la sentencia y sus efectos legales, más no borra el hecho de la ocurrencia de las convicciones. No le asiste la razón. Evaluemos.

Si bien el derecho a poseer y portar armas que nace de la Segunda Enmienda es de carácter fundamental, este no es ilimitado ni irrestricto. *Pueblo v. Rodríguez López et al, supra.* Por virtud de ello, la Asamblea Legislativa creó la Ley Núm. 168-2019, *supra*, la cual responde al interés apremiante del Estado de proveer una herramienta que les permita a las agencias del orden público promover una mayor seguridad y bienestar para Puerto Rico en cuanto al uso de armas. La precitada Ley establece que, la Oficina de Licencias de Armas, evaluará si un peticionario que solicita una licencia de armas cumple con los requisitos establecidos en dicha Ley para su concesión. Para ello, el NPPR realiza una

investigación en los archivos digitales, los cuales están conformados por "[…] cualquier agencia gubernamental de Puerto Rico, de Estados Unidos o cualquier subdivisión política de este, de cualquier entidad extranjera o internacional a la que pueda tener acceso, incluyendo los archivos del National Crime Information Center (NCIC), del National Instant Criminal Background Check System (NICS), el Sistema de Información de Justicia Criminal (SIJC-PR) y el Registro Criminal Integrado (RCI)." Artículo 2.02(d)(3) de la Ley Núm. 168-2019, *supra*. Por otro lado, la Ley establece que no se expedirá licencia de armas a "[…] cualquier persona que haya sido convicta, en Puerto Rico, en cualquier otra jurisdicción estadounidense de cualquier delito grave o su tentativa, por delito menos grave que conlleve violencia […]." Artículo 2.09 de la Ley Núm. 168-2019, *Id*

Según surge del expediente de autos, la denegatoria para la expedición de la licencia de armas solicitada por la parte apelante se sustentó en los Artículos 2.02(d)(3) y 2.09 de la Ley Núm. 168-2019, *Id* Del propio texto de la Ley se desprende que, al momento de considerar los requisitos para expedir la licencia, el NPPR evaluará las convicciones previas por delitos graves, entre otras cosas. El proceso investigativo mandatorio para la otorgación de licencias de armas, trasciende la simple confirmación de un Certificado Negativo de Antecedentes Penales, como sugiere la parte apelante. Antes bien, se dirige a una investigación en los archivos digitales de todas las agencias gubernamentales tanto en Puerto Rico, Estados Unidos, y cualquier subdivisión a la que el NPPR pueda tener acceso, incluyendo los archivos digitales mencionados en el Artículo 2.02 de la referida ley. Conforme a lo anterior, el NPPR tiene la obligación de denegar la solicitud de licencia de armas de hallar que el solicitante incumple con las disposiciones de los precitados artículos. Ello en función de cumplir con su deber de asegurarse que las personas a quienes se les expida una licencia de armas no representan un riesgo para la sociedad.

Por otro lado, la Ley 254-1974 que autoriza a NPPR a expedir Certificados de Antecedentes Penales, tiene el propósito de potenciar la

inserción de los exconvictos en la fuerza laboral y su consiguiente rehabilitación mediante la eliminación de convicciones previas.  Por razón del Indulto otorgado al apelante, la convicción fue eliminada de los registros de antecedentes penales, pero no de los registros digitales alternos los cuales el NPPR tiene el deber de revisar para expedir una licencia de armas.

No existe controversia en que el apelante efectivamente fue convicto por los delitos de homicidio involuntario e infracciones a los Artículos 6 y 8 de la Ley Núm. 17 de 19 de enero de 1951, *supra.* La controversia gira en torno a, si el hecho de haber recibido un Indulto Total por dichos delitos y poseer un Certificado Negativo de Antecedentes Penales constituye base suficiente para garantizarle el derecho a poseer y portar armas. Contestamos en la negativa. La concesión de la licencia de armas requiere un análisis más allá de un certificado de antecedentes penales. De lo contrario, la investigación que se realiza en los archivos digitales, conforme a lo establecido en la Ley de Armas, carecería de propósito.

Según surge del expediente, el NPPR enfatizó que, de una búsqueda en los archivos digitales oficiales se evidencia que el apelante resultó convicto por delitos graves y violaciones a la Ley de Armas. Razón por la cual no satisfizo los requisitos dispuestos en ley para obtener la licencia de armas. Cabe resaltar que, nuestro Tribunal Supremo ha pautado que "la Policía tiene la obligación de proteger como medida de prevención a las personas y a la propiedad" por lo que "se concedió al cuerpo policiaco el poder de no conceder, no renovar y revocar las licencias de armas como medidas preventivas a posibles actos violentos." *Rolón Martínez v. Caldero López, supra,* a la pág. 45. Por lo cual, existe impedimento en ley para la otorgación de la licencia de armas solicitada por la parte apelante.

Por último, el apelante nos señala que erró el Tribunal de Primera Instancia al determinar que, en los procesos de revisión judicial, las decisiones de los organismos administrativos se presumen correctas y merecen la deferencia de los tribunales. Presunción que descansa en el

"*expertise* administrativo" de la agencia. Por lo tanto, en la revisión judicial de la aprobación a la solicitud de licencia de armas, la intervención de los tribunales es limitada y consiste en evaluar si la agencia actuó de manera arbitraria o ilegal, o de forma tan irrazonable que su actuación constituyó un abuso de discreción.

La función revisora del Tribunal de Apelaciones se circunscribe a determinar si el remedio brindado por la agencia administrativa es el apropiado; si las determinaciones de hechos realizadas se basan en evidencia sustancial que obra en el expediente administrativo; y, si las conclusiones de derecho son correctas mediante una revisión completa y absoluta. 3 LPRA sec. 9675. Cabe destacar que, la Sección 4.5 de la LPAU dispone que, las conclusiones de derecho hechas por las agencias administrativas "[…] serán revisables en todos sus aspectos por el tribunal." *supra*. Conforme a lo anterior, nuestro Alta Curia en el caso *Vázquez et al. v. DACo*, *supra,* adoptó lo resuelto por el Tribunal Supremo de los Estados Unidos en *Lopez Bright Enterprises v. Raimondo*, *supra*. En la precitada jurisprudencia y mediante opinión, se estableció que los tribunales no vienen obligados a darle deferencia a la interpretación de derecho que haga una agencia administrativa simplemente porque la ley sea ambigua. *Id*

La controversia que nos ocupa no gira en torno a la ambigüedad de un estatuto, ni a la interpretación administrativas sobre el texto de la Ley. Mas bien, se trata de un proceso adjudicativo mediante el cual la concesión de la licencia de armas está supeditada a la investigación realizada por el NPPR, conforme a los lineamientos y exigencias establecidos en la Ley de Armas. Todos los aspectos de la decisión administrativa fueron revisados conforme a derecho, y el foro primario concluyó que no hubo error en la determinación del NPPR. Por lo cual, no erró el foro primario al realizar estas determinaciones.

**IV**

Por los fundamentos esbozados, resolvemos que no se cometieron los errores señalados, por lo que se confirma la sentencia apelada.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones